I please the court. Your honors, I'm John Alcorn. I practice immigration law in Southern California for 24 years, and I've had many immigration court cases throughout the country since it is federal law. I've had the honor and privilege of appearing before this court in Pasadena several times. It's a true honor to appear before you today here. Sometimes, all the time when I appear in oral argument, I try to bring up material matters other than recitation of the cases that have been cited, other than the recitation of the facts. Sometimes it helps that I'm usually the same counsel who appeared at trial and was there. Sometimes it hurts because I'm too close to the case. There seem to be two main issues in this case. Could you start, though, by telling us who you represent? Yes, Your Honor. I represent Hovsek Hovakimian, who was the petitioner and the appellant. Thank you. The two main issues seem, in our view, to be did I waive the issue of improper translation. I believe it's quite clear I did not. I brought that up in oral argument. It's on the administrative record. I wrote that in the notice of appeal to the BIA. It was not addressed in our brief on appeal to the BIA. That's undisputed. We did not address that in any detail at all. But it is on the notice of appeal. So based on this court's precedent decision You think that's enough? I think that's enough. Just to put it in the notice? Yes, Your Honor. And I do think that this court has ruled that that's enough. And I hope that you'll agree with me that the second issue is the credibility and the judge's finding of adverse credibility. During that trial, there seemed to be a disconnect, such as when the judge would ask the respondent, my client, how many apples are in the basket, my client would give an answer that almost seemed as crazy as my house is blue. We had a lot of problems. And I didn't mention that, more than mention that, in the closing argument. And I did cite that in the notice to appeal. The I.J. in his decision, Judge Kilroy, did address the conclusory statements about credibility that he is supposed to address. He found inconsistencies. He found my client not credible. On the other hand, he did not really cite any examples, in my view, to reach those conclusions. They were mere statements. They were not supported in his oral decision by any evidence in the record. So I believe that there was clear and convincing testimony by the respondent, who was 18 years old at the time, and recently, last month, was finally released from Department of Homeland Security. But he has spent 27 months in custody on this case. His father testified. He testified. There were some discrepancies in his testimony. But I think they can clearly be addressed to the translator, as I pointed out in our brief on this appeal. I think there's absolutely no question that this court can take judicial notice, as has been pointed out, about the problems in Armenia. The State Department reports that are part of this administrative record clearly state that there are terrible human rights abuses in Armenia. And I'm happy that this court is aware of that. My client, obviously, did not have to come here at age 18. He did not have to be there. He obviously, obviously feared something bad in his testimony. He testified he feared the awful life in Armenia. That's a big part of it. But so, and he also didn't want to be there when he turned 18 and got drafted. That's a part of it, too, Your Honor. I won't deny that. It's not political persecution. You're absolutely right. And I'm not making that claim at all. The evidence, the nexus between his father's being arrested and beaten and so on, and a particular political persuasion that brought that on. That is the nexus. That is the key on which this case depends. Because, obviously, fear of being drafted is no basis for asylum. And if he doesn't have imputed political opinion through his father, then this case should definitely be rejected. Wasn't the best evidence about what he needed to prove be his father? Well, and his father testified, but his father had escaped from Armenia before that and was not aware of the direct incidents that my client suffered. He was aware of whatever the political cause of the trouble was, wasn't he? He was. These guys weren't Turks or anything. They had some other beef with the government. Absolutely right, Your Honor. That's correct. His father was very politically involved and had switched political parties and did testify to that effect and then got out of the country and left his family behind. And as Your Honors may have noted in the record, even the mother was beaten and abducted. She wasn't located, was she? She's still in Russia, isn't she? She's still in Armenia. Well, I'm not sure where she is. I don't know, and I haven't been in touch with her. As far as I'm aware, that's absolutely right. The father happened to show up at the hearing. He was very reluctant, and in the record is my subpoena to Judge Kilroy, because I felt I needed to vigorously and zealously represent the son, and the father didn't want to testify. And it turned out that when we got close to the trial date, the father did agree to come. Now, I don't really know if the father was afraid of other Armenians here coming to court or finding out about it or what his motives were, but I wanted to do everything possible to bulwark my client's credibility. And I think I did. I think Judge Kilroy was not a reasonable fact finder, and I very much lament having to come as high as this level to complain about whether or not an immigration judge who's in the trenches every day is a reasonable finder of facts. Let me ask you, I guess, the question that's bothering me, is the story that the young man presented could have had a lot of, or could have been true in many respects, and some parts of it could have been made up. And how does the trier of fact decide this kind of a question? And usually it's, if we have a jury, then we have 12 idiots who decide who they believe. But here you have a trier of fact who says, I don't believe him. Now, how do we find from that record something that says he's compelled to believe him? That is the nut of this case, Your Honor. Can you tell me where that is in the record? The thing that compels the trier to believe this young man's story. I believe that the precedent cases from both the BIA and this circuit say that if the asylum applicant's testimony is consistent, if he does not contradict himself, if there is no opposing evidence submitted by the government. Jay pointed to some things he thought were inconsistent. I agree. He did. And I don't think those were inconsistent. And as I say, when I had a chance on direct questioning of my client to ask him questions, I could ask and ask and ask until I could get to the core of the nut through the translator. When government counsel questioned him on CROSS or the IJ intervened, they, it wasn't their client, of course. So they would stop, and I don't think that they got a full explanation. Just like when they asked him, what were you beat with? Well, can you provide me with the citation quickly of what it is that you're complaining about here, so I can see it? Your Honor, when he said on testimony that he was beat with an iron, that was very confusing, what an iron is. And then in the administrative record, in his asylum application, there's a reference to his statement. Do you have? All right. Well, we'll give you you've almost used your time. We'll give you a moment on rebuttal. We'll hear from the government. Okay. But there's a statement that it was chains. So things like that. You may proceed. Good morning, Your Honors. Again, my name is Carolyn Picotti, and I represent the Attorney General of the United States in this case. As noted by the Court's questioning of my opposing counsel, the heart of this case involves credibility determination, once again. And the problem here is that the trier of fact, the immigration judge, after hearing all of the testimony, concluded that the petitioner's statements about what had happened to him were not sufficient to meet his burden of proof. And the immigration judge gave specific, cogent reasons as to why his statements did not establish his eligibility for asylum. If I can quote from the immigration judge's findings, he ruled that they were his story was inherently improbable, internally inconsistent, and nonresponsive to certain questions. Now, opposing counsel would have this court state that, well, you know, there were problems with the translator. But the government maintains that that issue regarding translation has been waived. And there is really no law in the circuit that says just stating a claim on a notice of appeal is sufficient to put the government on notice as to what the ‑‑ as to not waive that issue. So in the term ‑‑ I don't think the issue is putting the government on notice, is it? It's in terms of having to ‑‑ of not waiving the issue before the circuit court of appeal. That's what I meant. Yes. But in finding ‑‑ in listening to the story, the immigration judge has to consider the demeanor, the rationality, the internal consistency, and the inherent persuasiveness. And when viewed ‑‑ when viewing the testimony as a whole, the immigration judge, who is a trier of fact in these cases, concluded that this story just was not persuasive, that there were some internal inconsistencies. And on that basis, there was sufficient reason to find that this petitioner was not credible. And the record at this level of review, as noted by Judge Goodwin, does not compel a contrary finding. It just does not compel a contrary finding. Therefore, the government's position is that the court must dismiss this petition for review and affirm the immigration judge's conclusions. And we would argue also that the translation issue has been waived. So he can't challenge that. And if there are any other questions that I can answer for the Court, I'd be happy to. There don't appear to be any. Okay. Thank you. Your Honors, I very much agree with Judge Goodwin's question. How does an immigration judge know when the applicant is credible or not? And I believe Judge Pragerson totally addressed that in his decision, Perez-Lastor, which was March 31st, 2000, in which he states the test about being sufficiently consistent and specific and credible. That is the test. And I think my client met the test, and immigration judge Kilroy did not. Okay. You've more than used your time. Do you want to give us a – could you give me an example? Just give me the page in the record for the citation of the translation problems that you – Yes. Well, in his statement attached to the asylum application, which is the administrative record, page 571, he talks about the chains with which he was beaten. In the testimony, and I don't have that page, but I do recall, he talked about being hit with an iron. And it wasn't clear what he was talking about. Okay. Okay. That's fine. Thank you. You have used your time. Okay. Your Honors. Thank you very much. The case just argued is submitted for decision. We'll hear the next case, which is –
judges: Schroeder, Goodwin, Tashima